Brian W. Brokate (BB 5830)
John Macaluso (JM 2058)
Walter-Michael Lee (WL 6353)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROLEX WATCH U.S.A., INC.,

                Plaintiff,

    v.

JULIO MUNOZ, individually and d/b/a
WWW.YOUTUBEWATCHES.COM;
UNKNOWN WEBSITES 1-10; "JOHN DOES"
1-10; and UNKNOWN ENTITIES 1-10

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE***
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO**
**SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE**
**ISSUED; EXPEDITED DISCOVERY ORDER; AND AN ORDER TEMPORARY**
**SEALING THE COURT FILE.**

## TABLE OF CONTENTS

Table of Authorities………………………………………………………...…………..2

Introduction…………………………………………………………………...……...6

Statement of Facts…………………………………………………………………...…7

    I. Background of Rolex's Business………..………………………………..……..7

    II. Defendants' Unlawful Conduct……………………………………………...…8

Argument…………………………………………………………………………...10

    I. Rolex Should Be Granted an Ex Parte Temporary Restraining Order………………10

    II. Rolex is Entitled to a Temporary Restraining Order and Preliminary Injunction……13

        A. Rolex Is Likely to Prevail on the Merits of Its Action………………….…..13

        B. Defendants' Acts Threaten Irreparable Harm………………………………18

        C. The Harm to Rolex Greatly Outweighs Any Hypothetical Injury to Defendants………………………………………………………………19

    III. Rolex Is Entitled to an Order Preventing the Fraudulent Transfer of Assets……….20

    IV. Rolex Should Be Allowed to Engage in Expedited Discovery………………….....23

    V. The Court File Should Be Temporarily Sealed…………………………………23

Conclusion………………………………………………………………………24

## TABLE OF AUTHORITIES

**Cases**

Am. Home Prods. V. Johnson Chem. Co.,
589 F.2d 103, 106 (2d Cir. 1977)................................................................................14

A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,
470 F.2d 689 (2d Cir. 1972)................................................................................15

Ayyash v. Bank Al-Madina,
233 F.R.D. 325, 327 (S.D.N.Y. 2005)................................................................23

Big Star Entm't, Inc. v. Next Big Start, Inc.,
105 F.Supp.2d 185 (S.D.N.Y. 2000)..................................................................15

Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.,
95 Civ. 4008 (AGS), 1995 U.S.Distr.LEXIS 12849 (S.D.N.Y. Sept. 6, 1995)...................15

Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.,
CV-07-1455 (CPS), 2007 U.S.Distr.LEXIS 34108 (E.D.N.Y. May 9, 2007)....................13

Coach, Inc. v. Andre
No. 11-CIV-6215 (S.D.N.Y. Sept. 6, 2011)...........................................................11, 21

Coach, Inc. v. Montiel
No. 11-CIV-6213 (S.D.N.Y. Sept. 6, 2011)........................................................... 11, 21

Coach, Inc. v. Smith
No. 11-CIV-3573 (S.D.N.Y. May 26, 2011)........................................................... 11, 21

Coach, Inc. v. Yu
No. 11-CIV-2873 (S.D.N.Y. Apr. 28, 2011)........................................................... 11, 21

Coach, Inc. v. Urbina
No. 11-CIV-2362 (S.D.N.Y. Apr. 7, 2011)........................................................... 11, 21

Coach, Inc. v. Davis
No. 11-CIV-1986 (S.D.N.Y. Mar. 22, 2011) .......................................................11, 21

Coach, Inc. v. Leap
No. 11-CIV-1985 (S.D.N.Y. Mar. 22, 2011) .......................................................11, 21

Coach, Inc. v. Pettie
No. 11-CIV-1987 (S.D.N.Y. Mar. 22, 2011) ....................................................... 11, 21

Coach, Inc. v. Braun-Oleyar
No. 11-CIV-1634 (S.D.N.Y. Mar. 10, 2011) .......................................................11, 21

Coach, Inc. v. Clemente-Cox
No. 11-CIV-1633 (S.D.N.Y. Mar. 14, 2011) ............................................................11, 21

Coach, Inc. v. Deprez
No. 11-CIV-0303 (S.D.N.Y. Jan. 24, 2011) ............................................................11, 21

Coach, Inc. v. Samero,
No. 11-CIV-0299 (S.D.N.Y. Jan. 19, 2011) ............................................................11, 21

Coach, Inc. v. Simpson & Simpson, Inc.,
No. 11-CIV-0302 (S.D.N.Y. Jan. 24, 2011) ............................................................11, 21

Coach, Inc. v. Waller,
No. 10-CIV-9237 (S.D.N.Y. Dec. 10, 2010) ............................................................11, 21

Coach, Inc. v. Zeibell,
No. 11-CIV-0258 (S.D.N.Y. Jan. 19, 2011) ............................................................11, 21

Colgate-Palmolive Co. v. North Am. Chem. Corp.,
238 F.Supp. 81 (S.D.N.Y. 1964).........................................................................19

Dial-A-Mattress Operating Corp. v. Mattress Madness,
841 F.Supp. 1339 (E.D.N.Y. 1994).....................................................................19

Dreyfus Fund, Inc. v. Royal Bank of Canada,
525 F.Supp. 1108 (S.D.N.Y. 1981).....................................................................17

E. Gluck Corp. v. Rothenhaus,
585 F.Supp.2d 505 (S.D.N.Y. 2008)....................................................................18

Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.,
No. 06-cv-5707 (JBW), 2006 U.S.Distr.LEXIS 79332 (E.D.N.Y. Oct. 1, 2006)................13

Fed. Express Corp. v. Fed Espresso, Inc.,
201 F.3d 168 (2D Cir. 2000)............................................................................18

Genesee Brewing Co. v. Stroh Brewing Co.,
124 F.3d 137 (2d Cir. 1997)............................................................................18

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
799 F.2d 867 (2d Cir. 1986)............................................................................13

Londontown Mfg. Co. v. Cable Raincoat Co.,
F.Supp. 1114 (S.D.N.Y. 1974)..........................................................................17

Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,
378 F.Supp.2d 448 (S.D.N.Y 2005).....................................................................13

3

Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,
426 F.3d 532 (2d Cir. 2005)............................................................................12

Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.,
221 F.2d 464 (2d Cir.1955)............................................................................15

Matter of Vuitton et. Fils S.A.,
606 F.2d 1 (2d Cir. 1979)..............................................................................10

McGregor-Doniger, Inc. v. Drizzle, Inc.,
599 F.2d 1126 (2d Cir. 1979).........................................................................17

My-T Fine Corp. v. Samuels,
69 F.2d 76 (2d Cir. 1934)..............................................................................19

Natural White, Inc. v. Dentorium Prods. Co.,
No. 00-7173, 2000 U.S. App. LEXIS 7755, *4 (2d Cir. April 25, 2000)............................18

North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd. Co.,
No. 10-cv-01630 (AKH)(S.D.N.Y. Mar. 16, 2010)......................................................11

Polaroid Corp. v. Polaroid Electronics Corp.,
287 F.2d 492 (2d Cir. 1961).......................................................................13-15

Reebok Int'l Ltd. v. Marnatech Enters., Inc.,
970 F.2d 552 (9th Cir. 1992)..........................................................................10

Rodeo Collection, Ltd. v. W. Seventh,
812 F.2d 1215 (9th Cir. 1987).........................................................................14

Rolex Watch U.S.A., Inc. v. Alvarez,
No. 11-CIV-0252 (S.D.N.Y. Jan. 12, 2012)........................................................ 10, 21

Rolex Watch U.S.A., Inc. v. Canner,
645 F.Supp. 484 (S.D.Fla. 1986)......................................................................16

Rolex Watch U.S.A., Inc. v. Oganesyan,
No. 11-CIV-8182 (S.D.N.Y. Nov. 14, 2011), ......................................................10,21

Rolex Watch U.S.A., Inc. v. White
No. 11-CIV-5415 (S.D.N.Y. Aug. 4, 2011)..........................................................10,21

TCPIP Holding Co. v. Haar Commc'n, Inc.,
244 F.3d 88 (2d Cir. 2001)............................................................................14

Two Pesos, Inc. v. Taco Cabana, Inc.,
505 U.S. 763 (1992)...................................................................................14

4

U.S. v. Hon,
904 F.2d 803 (2d Cir. 1993)...............................................................................16

Warner-Lambert Co. v. Northside Dev. Corp.,
86 F.3d 3 (2d Cir. 1996)....................................................................................18

## **Statutes**

15 U.S.C. § 1057(b)..........................................................................................13

15 U.S.C. § 1116................................................................................................10

15 U.S.C. § 1116(d)(8).......................................................................................20

15 U.S.C. § 1116(d)(10)(A)................................................................................19

15 U.S.C. § 1116(d)(10)(B)................................................................................19

**INTRODUCTION**

Pursuant to and in accordance with the Federal Rules of Civil Procedure, this memorandum of law is submitted by plaintiff Rolex Watch U.S.A., Inc. ("Rolex") in support of its ex parte application for the following: (a) a temporary restraining order; (b) order to show cause why a preliminary injunction should not be issued; (c) expedited discovery order; (d) asset restraining order; and (e) an order temporary sealing the court file, against defendant Julio Munoz, individually and d/b/a www.youtubewatches.com; Unknown Websites 1-10; "John Does" 1-10; and Unknown Entities 1-10, (hereinafter collectively referred to as "Defendants"). Defendants are using the Internet to distribute merchandise bearing counterfeits of Rolex's federally registered trademarks causing both irreparable harm to Rolex and to the public that purchase such inferior goods.

For years, the United States has been inundated with counterfeit merchandise. Despite many lawsuits filed by the owners of valuable trademarks, counterfeiters continue to surreptitiously churn out their inferior wares. Members of the consuming public, unable to distinguish between the counterfeit and authentic merchandise, inevitably attribute defects in the bogus merchandise to the owners. Moreover, the counterfeiters' illicit operations deprive those owners of billions of dollars in profit.

In addition, actual experience has proven time and time again that once a counterfeiter realizes that they are about to be apprehended, they invariably will conceal or destroy any relevant business records and conceal inventory. For this reason, conventional restraining orders have proven largely ineffectual. Lured by the prospect of substantial cash profits, counterfeiters have shown little, if any, respect for court orders.

Defendants in this action can similarly be expected to divest themselves of their inventory of counterfeit merchandise and any relevant business records absent the issuance of an ex parte order. Confronted with the loss of their inventory and a substantial adverse judgment, it

is unrealistic to expect them to voluntarily produce their records concerning their illegal activities. Therefore, in order to combat the serious harms caused by counterfeiters, it is critical that this Court grant Rolex the relief requested herein.

## STATEMENT OF FACTS

I.    BACKGROUND OF ROLEX'S BUSINESS.

Rolex is engaged in the business of manufacturing and distributing throughout the world high quality merchandise including, but not limited to, watches. Rolex is a preeminent designer known not only in the United States but throughout the entire world with global sales in the multi-millions. Rolex Watch U.S.A. Inc. is the owner of trademarks which are protected by United States Federal Trademark Registrations. See Complaint Exh. 1 (collectively the "Rolex Registered Trademarks").

The Rolex Registered Trademarks, which are distinctive marks used to identify high quality merchandise, have been used for many years and have not been assigned or licensed to Defendant in this matter. By virtue of the sustained use of the marks, the registrations, the high quality of the products and the substantial advertising and publicity for the marks, the Rolex Registered Trademarks are now famous and have been famous since well prior to the activities of Defendant complained of herein.

Much like other brands, Rolex has been the victim of an unprecedented wave of counterfeiting. Counterfeiters have inundated the marketplace with illegal knockoff merchandise that lacks the fine manufacturing of authorized Rolex products. The Internet has provided counterfeiters the ability to reach hundreds of millions of customers. Websites that distribute such illegal products have caused the greatest amount of damage to both Rolex and to consumers that purchase such poor quality merchandise.

## II.   DEFENDANTS' UNLAWFUL CONDUCT.

The illegal activities of Defendants are fully set forth in the affidavit of Charles Berthiaume and Benjamin Kwapisz submitted herewith. Defendants have used the Internet to distribute watches bearing counterfeits of the Rolex Registered Trademarks.

On or about December 2011, Rolex discovered the website www.youtubewatches.com (the "Website") which is being used to advertise, distribute, promote, offer for sale and sell watches bearing counterfeits and infringements of the Rolex Registered Trademarks. These watches are sold as "100% mirror genuine ones" and as "almost the same feel and weight as original." It is clear that these items are not genuine Rolex Watches. Further, Defendants are using the website www.craiglist.org to advertise the Website and watches bearing counterfeits and infringements of the Rolex Registered Trademarks.

The Website is registered to Munoz at the address 13801 Chef Menteur Highway, #14, New Orleans, LA 70129 and the phone number (504) 210-7986. Upon information and belief, this is Defendant Munoz's home address and home telephone number.

On or about December 29, 2011, Rolex's agent went to the Website and purchased a "Rolex Daytona" from defendant using payment services provided by www.paypal.com ("PayPal"). Rolex's agent received a confirmation of payment from PayPal stating that $160.00 had been sent to "www.youtubewatches.com ".

On or about January 11, 2012, Rolex's agent received a package containing one (1) watch bearing counterfeits and infringements of the Rolex Registered Trademarks (the "Counterfeit Watch"). The return address indicated that the package originated from "13801 Chef Menteur Highway, #14, New Orleans, LA 70129".

Rolex's representative has examined the Counterfeit Watch and determined that none of its parts, including the dial, bracelet links, bezel and movement are of Rolex origin. The

Counterfeit Watch contains numerous counterfeits and infringements of the Rolex Registered Trademarks.

To date, Defendants continue to offer for sale and sell watches bearing counterfeits of the Rolex Registered Trademarks on the Internet.

Rolex has pursued multiple legal actions against counterfeiters and has gone to great lengths to protect its name and enforce its trademarks. The harm to Rolex is great. Rolex's goodwill is being preyed upon by those selling poor quality merchandise and making exorbitant profits. Defendants are being unjustly enriched from their use of the Rolex Registered Trademarks.

After pursuing these multiple legal actions, Rolex has learned that counterfeiters, when given notice, secrete their illegal inventory, destroy records and conceal all income generated from such illegal sales. These counterfeiters usually fail to appear and Rolex is left with an unenforceable judgment. The only way for Rolex to obtain proper relief is to proceed on an ex parte basis.

## ARGUMENT

I.   ROLEX SHOULD BE GRANTED AN EX PARTE TEMPORARY RESTRAINING ORDER.

It is appropriate in this case to issue an ex parte temporary restraining order since Defendants are likely to conceal and destroy all evidence of their infringing conduct upon receiving notice of this action.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse

party or that party's attorney can be heard in opposition." This is such a case.

Further, authority to issue the ex parte restraining order is specifically mandated by § 34 of the Lanham Act. 15 U.S.C. § 1116. Congress's purpose in providing for ex parte remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters served with a civil summons from disappearing or quickly disposing of existing inventory of counterfeit items and the records relating to their manufacture and distribution. See Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

In Matter of Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979), plaintiff petitioned for a writ of mandamus instructing the district court to issue an ex parte order. In granting the petition, the Second Circuit held that in trademark actions where the goods are nearly identical to legitimate goods, irreparable injury exists and notice should not be required, since to do so would "serve only to render fruitless further prosecution of th[e] action." Id. at 4-5.

If notice is given of Rolex's intent to seek a temporary restraining order, Defendants can easily "unload" or hide the counterfeit goods or means of making them and destroy their records to avoid being caught. Courts, recognizing the propensity of certain defendants to dispose of their inventory of counterfeit merchandise and records, have not hesitated to grant ex parte temporary restraining orders. Id., 606 F.2d at 3; see generally Reebok Int'l, Ltd. v. Marnatech. Enters., Inc., 970 F.2d 552 (9th Cir. 1992).

Recently, several judges in this District have issued almost identical temporary restraining orders in analogous cases involving websites selling merchandise bearing counterfeits. See Rolex Watch U.S.A., Inc. v. Alvarez, No. 11-CIV-0252 (S.D.N.Y. Jan. 12, 2012) (Swain, J.); Rolex Watch U.S.A., Inc. v. Oganesyan, No. 11-CIV-8182 (S.D.N.Y. Nov. 14, 2011), Oetken , J. (Order signed by Sweet, J.); Rolex Watch, U.S.A., Inc. v. White, No. 11-CIV-5415 (S.D.N.Y Aug. 4, 2011) (Jones, J); Coach, Inc. v. Andre, No. 11-CIV-6215 (S.D.N.Y.

Sept. 6, 2011) (Baer, J); Coach, Inc. v. Montiel, No. 11-CIV-6213 (S.D.N.Y. Sept. 6, 2011)
(Swain, J.); Coach, Inc. v. Smith, No. 11-CIV-3573 (S.D.N.Y. May 26, 2011) (Pauley, J.);
Coach, Inc. v. Yu, No. 11-CIV-2873 (S.D.N.Y. Apr. 28, 2011) (Baer, J.) (Order signed by Batts,
J.); Coach, Inc. v. Urbina, No. 11-CIV-2362 (S.D.N.Y. Apr. 7, 2011) (Crotty, J.); Coach, Inc. v.
Davis, No. 11-CIV-1986 (S.D.N.Y. Mar. 22, 2011) (Stanton, J.) (Order signed by Baer, J.);
Coach, Inc. v. Leap, No. 11-CIV-1985 (S.D.N.Y. Mar. 22, 2011) (Sand, J.) (Order signed by
Baer, J.); Coach, Inc. v. Pettie, No. 11-CIV-1987 (S.D.N.Y. Mar. 22, 2011) (Buchwald, J) (Order
signed by Baer, J.); Coach, Inc. v. Clemente-Cox, No. 11-CIV-1633 (S.D.N.Y. Mar. 14, 2011)
(Pauley, J.); Coach, Inc. v. Braun-Oleyar, No. 11-CIV-1634 (S.D.N.Y. Mar. 10, 2011) (Sweet,
J.) (Order signed by Berman, J.); Coach, Inc. v. Deprez, No. 11-CIV-0303 (S.D.N.Y. Jan. 24,
2011) (Sand, J.); Coach, Inc. v. Simpson & Simpson, Inc., No. 11-CIV-0302 (S.D.N.Y. Jan. 24,
2011) (McMahon, J.); Coach, Inc. v. Samero, No. 11-CIV-0299 (S.D.N.Y. Jan. 19, 2011)
(Koeltl, J.); Coach, Inc. v. Zeibell, No. 11-CIV-0258 (S.D.N.Y. Jan. 19, 2011) (Batts, J.); and
Coach, Inc. v. Waller, No.10-CIV-9237 (S.D.N.Y. Dec. 10, 2010) (Swain, J.).

Further, in North Face Apparel Corp. v. Fujian Sharing Import & Export Lts. Co., No.
10-cv-01630 (AKH) (S.D.N.Y. Mar. 16, 2010), the court granted similar relief as requested
herein, including an ex parte temporary restraining order, against defendants. (Order granting ex
parte request for temporary restraining order, seizure order, asset restraining order, domain name,
transfer order and order to show cause for preliminary injunction). There, the court found that
defendants, part of an Internet counterfeiting ring, were likely to destroy or hide the counterfeit
products, means of distributing and selling the counterfeit products, and business records if
notice was provided of plaintiffs' action. Id. Specifically, the court noted that "entry of an order
other than an ex parte order... and asset restraint would not adequately achieve the purposes of
the Lanham Act to preserve Plaintiffs' equitable remedies for trademark counterfeiting." Id.

The need for ex parte relief is even greater where counterfeiters have all the advantages

of anonymity provided by the Internet. Without the requested relief, neither this Court nor Rolex will be able to prevent the disappearance or destruction of crucial evidence that would enable Rolex to track the sources of Defendants' illegal products.

As detailed in the affidavits submitted herewith, Defendants promote, advertise, sell, and/or offer for sale different quality goods bearing counterfeits of the Rolex Registered Trademarks. Not only are Defendants engaging in illegal activities, but they also appear to operate a sophisticated online business.   They are undoubtedly well aware that trademark counterfeiting is illegal.  With every passing day, Rolex is suffering greater harm and consumers are being defrauded out of more and more money.

Accordingly, under the circumstances of this case, it is highly likely that if Defendants were given prior notice of this action, Defendants would destroy, conceal, or transfer their records, their counterfeit goods, and the means for making and selling these items.  Therefore, it is appropriate for this Court to issue an <u>ex parte</u> temporary restraining order.


II.   ROLEX IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.

Due to the irreparable harm that Defendants are causing Rolex and the public, it is appropriate for a temporary restraining order and a preliminary injunction to be issued in this case.

A plaintiff is entitled to a preliminary injunction if it can demonstrate that it will suffer irreparable harm if defendants are not enjoined promptly, and either (1) a likelihood that they will succeed on the merits at the trial of this action, or (2) sufficiently serious questions going to the merits of this action to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. <u>Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.</u>, 426 F.3d 532, 537 (2d Cir. 2005).

In this case, it is appropriate for such an injunction to be granted.

    A.    <u>Rolex Is Likely to Prevail on the Merits of Its Action.</u>

    To establish a <u>prima</u> <u>facie</u> case of trademark infringement and thus show probable success of the merits of its claims, Rolex must show that Defendants' use of the Rolex Registered Trademarks is likely to confuse customers regarding the source of the product. <u>See</u> <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,</u> 799 F.2d 867, 871 (2d Cir. 1986); <u>Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.,</u> CV-07-1455 (CPS), 2007 U.S. Dist. LEXIS 34108, *7-8 (E.D.N.Y. May 9, 2007). This requires a showing: (1) of a valid registered trademark; and (2) that defendants' use of the marks is likely to cause confusion. <u>See</u> <u>Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.,</u> No. 06-cv-5707 (JBW), 2006 U.S. Dist. LEXIS 79332, at *3 (E.D.N.Y. Oct. 1, 2006).

    First, there can be no doubt but that Rolex is the owner of the trademarks at issue. Submitted herewith are the United States Trademark Registrations for the trademarks at issue. These registrations provide <u>prima</u> <u>facie</u> evidence of both the validity of the marks and Rolex's ownership of such marks.  <u>See</u> 15 U.S.C. § 1057(b))

    Second, Rolex can demonstrate that Defendants' use of the Rolex Registered Trademarks is likely to cause consumer confusion.  "In trademark infringement cases, likelihood of confusion is a factual determination made by applying the eight-factor test set forth in <u>Polaroid Corp. v. Polaroid Electronics Corp.,</u> 287 F.2d 492, 495 (2d Cir. 1961)." <u>Beharry</u>, 2006 U.S. Dist. LEXIS at *4. These eight factors are as follows: (1) the strength of the moving party's mark; (2) similarity of the marks; (3) proximity of the goods; (4) likelihood that the moving party will bridge the gap and offer a product like the alleged infringer; (5) actual confusion; (6) good faith on the defendant's part; (7) quality of the defendant's products; and (8) the sophistication of the buyers. <u>Polaroid</u>, 287 F.2d at 495.

"However ... where counterfeit marks are involved, it is not 'necessary to perform the step-by-step examination of each <u>Polaroid</u> factor because counterfeit marks are inherently confusing.'" <u>Beharry</u>, 2006 U.S. Dist. LEXIS at *5 (quoting <u>Lorillard Tobacco Co. v. Jamelis Grocery, Inc.</u>, 378 F.Supp.2d 448 (S.D.N.Y. 2005)). Even if this court decides to apply the <u>Polaroid</u> test, analysis of the totality of these factors indicates indisputably that the Defendants' use of Rolex's Registered Trademarks is likely to cause consumer confusion.

As to the first <u>Polaroid</u> factor, analysis of the strength of Rolex's Registered Trademarks demonstrates that the Rolex Registered Trademarks are strong and identifiable marks. In considering the strength of the mark, courts look to (i) inherent strength and (ii) acquired strength. <u>TCPIP Holding Co. v. Haar Commc'n, Inc.</u>, 244 F.3d 88, 100 (2d Cir. 2001). Inherent strength is measured by the "mark's degree of inherent distinctiveness" along the spectrum of protectability and strength for trademark. <u>Id.</u>  The spectrum of protectability and strength for trademarks is divided into four primary types of designations - (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. <u>See</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992). Arbitrary or fanciful marks are the strongest. A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. <u>Rodeo Collection, Ltd. v. W. Seventh</u>, 812 F.2d 1215, 1218 (9th Cir. 1987). The Rolex Registered Trademarks are comprised of inherently distinctive product configurations and are arbitrary and fanciful.

In addition, the Rolex Registered Trademarks have also acquired strength and are well-known throughout the world. The fact that the Rolex Registered Trademarks are the subject of federal trademark registrations, in addition to creating a strong presumption of validity, stands as further proof of the strength of the marks. <u>See</u> <u>Am. Home Prods. v. Johnson Chem. Co.</u>, 589 F.2d 103, 106 (2d Cir. 1977); <u>Big Star Entm't, Inc. v. Next Big Star, Inc.</u>, 105 F. Supp. 2d 185 (S.D.N.Y. 2000).

As to the second Polaroid factor, analysis of the degree of similarity between the marks shows that Defendants are using marks that are overwhelmingly similar to the Rolex Registered Trademarks.  Defendants have chosen marks identical to those of Rolex's. There is clearly no defense available to Defendants regarding their choice of marks and the possibility of non-similarity. It has often been held that the law does not look with favor on the businessman who, out of the vast variety of marks available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product. See, e.g., A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689 (2d Cir. 1972); Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., 95 Civ. 4008 (AGS), 1995 U.S. Dist. LEXIS 12849, at *32 (S.D.N.Y. Sept. 6, 1995).

As to the third Polaroid factor, the closeness of the products renders Defendants' use of the marks particularly likely to cause consumer confusion. Defendants are distributing watches, all of which bear counterfeits and infringements of the Rolex Registered Trademarks. Rolex, likewise, distributes merchandise in this class.  Defendants use their marks on products that are identical in kind, but not in quality, to those of Rolex's and are sold to the same market of consumers.

As to the fourth Polaroid factor, there is no need to determine whether Rolex will "bridge the gap" since Rolex already offers goods in the same classes that are being counterfeited by Defendants.

As to the fifth Polaroid factor, Defendants are offering to sell and selling counterfeit goods which are virtually identical in appearance to those sold by Rolex.  Consumers purchasing Defendants' goods will likely be actually confused since they are purchasing goods bearing the Rolex Registered Trademarks under the impression they are purchasing genuine goods authorized by the Rolex.

Post-sale, consumers viewing the counterfeits sold by the Defendants will also be confused. In Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 221 F.2d 464, 466 (2d Cir. 1955), the Court stated as follows:

> [A]t least some customers would buy [the copier's] cheaper clock for the purpose of acquiring the prestige gained by displaying what many visitors at the customers' homes would regards as a prestigious article. [The copier's] wrong thus consisted of the fact that such a visitor would be likely to assume that the clock was an Atmos clock.... [T]he likelihood of such confusion suffices to render [the copier's] conduct actionable.

The damage to the senior user in such a case is that consumers would acquire the prestige value of the senior user's product by buying the copier's cheap imitation. Even though the knowledgeable buyer knew that he was getting an imitation, viewers would be confused. Thus, the senior user suffers a loss of sales diverted to the junior user, the same as if the actual buyer were confused.

In 1962, Congress struck out language in the Lanham Act which required confusion, mistake or deception of "purchasers as to the source of origin of such goods and services." Several courts have noted this expansion of the test of infringement and held that it supports a finding of infringement when even non-purchasers are deceived, as in the "Atmos clock case." Accord Ferrari S.p.A.Esercizio Fabbriche Automobili E Corse v. McBurnie, 11 U.S.P.Q.2d 1843 (S.D. Cal. 1989); Ferrari S.p.A.Esercizio Fabbriche Automobili E Corse v. Roberts, 944 F.2d 1235, 1245 ("Since Congress intended to protect the reputation of the manufacturer as well as to protect purchasers, the Act's protection is not limited to confusion at the point of sale. Because Ferrari's reputation in the field could be damaged by the marketing of [Defendant's] replicas, the district court did not err in permitting recovery despite the absence of point of sale confusion."); see Rolex Watch U.S.A., Inc. v. Canner, 645 F.Supp. 484, 493 (S.D. Fla. 1986) (noting that confusion and mistake can occur among other persons at a future time, such as viewers of the buyer and recipients of a gift of a counterfeit); U.S. v. Hon, 904 F.2d 803, 804-08 (2d Cir. 1993)

16

(The "likely to confuse" standard is not limited to purchasers and potential purchasers, but includes the general public); see also McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Vol. 3, Sec. 23.7 (West 4th Ed. 2001).

As to the sixth Polaroid factor, Defendants' adopted Rolex's Registered Trademarks in bad faith.  The Rolex Registered Trademarks are world-famous. That Defendants' choice of marks which are virtually identical to such strong marks demonstrates conclusively Defendants' desire and purpose to trade upon Rolex's goodwill. See Dreyfus Fund, Inc. v. Royal Bank of Canada, 525 F. Supp. 1108, 1120-21 (S.D.N.Y 1981);  Londontown Mfg. Co. v. Cable Raincoat Co., 371 F. Supp. 1114 (S.D.N.Y. 1974).

As to the seventh Polaroid factor, Defendants' products are of inferior quality. The Defendants' counterfeit goods are of an unknown makeup and the goods did not pass through Rolex's quality control process. These products may contain products that are harmful to the public.

As to the eighth Polaroid factor, given the relatively inexpensive nature of the products, consumers are unlikely to carefully inspect the merchandise thereby avoiding consumer confusion. For consumers purchasing the goods at issue, the most important fact is generally price. The greater the price of a product, the more careful the typical potential purchaser is expected to be, thereby reducing the likelihood of confusion. See McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979), overruled on other grounds by Bristol-Myers Squibb v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1043-44 (2d Cir. 1992) ("the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.") The respective goods sold by Rolex and Defendants are relatively inexpensive products which consumers likely do not spend a great deal of time selecting.  Even a detailed analysis of Defendants' counterfeit products by a consumer would not reveal that they are distinguishable

from Plaintiff's genuine goods because the marks being used by Defendants are virtually identical to Rolex's Registered Trademarks.

An application of the eight <u>Polaroid</u> factors demonstrates a likelihood of confusion in this case and therefore, Rolex is likely to succeed on the merits of its case.

B.      <u>Defendants' Acts Threaten Irreparable Harm</u>.

Defendants' infringing activities must be stopped immediately in order to prevent further diversion of sales from Rolex and harm to Rolex's reputation from the sale of counterfeit merchandise. The Second Circuit has held that a <u>prima</u> <u>facie</u> showing of trademark infringement creates a presumption that the trademark holder has suffered irreparable harm. <u>See, e.g., Natural White, Inc. v. Dentorium Prods. Co.</u>, No. 00-7173, 2000 U.S. App. LEXIS 7755, at *4 (2d Cir. April 25, 2000); <u>Fed. Express Corp. v. Fed. Espresso, Inc.</u>, 201 F.3d 168, 174 (2d Cir. 2000); <u>Genesee Brewing Co. v. Stroh Brewing Co.</u>, 124 F.3d 137, 142 (2d Cir. 1997); and <u>E. Gluck Corp. v. Rothenhaus</u>, 585 F.Supp.2d 505, 519 (S.D.N.Y. 2008). Rolex has provided a <u>prima</u> <u>facie</u> showing of infringement and is therefore entitled to a presumption of irreparable harm.

Further, even if this Court chooses not to apply a presumption of irreparable harm standard, Rolex can demonstrate actual irreparable harm sufficient to satisfy the test's requirement.    Defendants' sale of counterfeit, non-conforming products will result in a substantial loss of customer goodwill. <u>See</u> <u>Warner-Lambert Co. v. Northside Dev. Corp.</u>, 86 F.3d 3, 8 (2d Cir. 1996).  Such loss of control over Plaintiff's reputation and the loss of quality control over products bearing Rolex Registered Trademarks lead to irreparable and unquantifiable harm. <u>See</u> <u>id.</u> Indeed, allowing the Defendants' infringing activities results in irreparable harm to Rolex that cannot be compensated by money damages. <u>See</u> <u>Fujian</u>, No. 10-cv-01630 (AKH) (S.D.N.Y. Mar. 16, 2010).

C.    The Harm to Rolex Greatly Outweighs Any Hypothetical Injury to Defendants.

Defendants' use of counterfeits of the Rolex Registered Trademarks in conjunction with goods identical in kind to those sold by Rolex, when balanced against Rolex's substantial efforts over the years to build up and maintain its enviable reputations and goodwill under its Trademarks, unquestionably tips the equities in favor of Rolex.

There is serious doubt that this Court should even consider any alleged commercial interests that Defendants may assert, inasmuch as Defendants are deliberately reproducing and trading upon Rolex's goodwill. See e.g., My-T Fine Corp. v. Samuels, 69 F.2d 76, 78 (2d Cir. 1934); Fujian, No. 10-cv-01630 (AKH) (S.D.N.Y. Mar. 16, 2010); Dial-A-Mattress Operating Corp. v. Mattress Madness, 841 F.Supp. 1339, 1357 (E.D.N.Y. 1994); and Colgate-Palmolive Co. v. North Am. Chem. Corp., 238 F. Supp. 81, 87 (S.D.N.Y. 1964). However, even if such interests are weighed, this Court should give greater consideration to the fact that Defendants are believed to have been distributing the infringing merchandise for only a relatively short time and the property rights which Defendants seek to blatantly appropriate are the result of many years of significant effort by, and expense to, Rolex.

III.   ROLEX IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS.

Rolex requests an order restraining Defendants' assets so that Rolex's right to an equitable accounting of Defendants' profits from sales of the their illegal merchandise is not impaired.

Courts retain the equitable power to freeze assets where plaintiffs seek both equitable and legal relief. Balenciaga Ame., Inc. v. Dollinger, No. 10 Civ. 2912 (LTS) 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) (internal citations omitted). Such power extends to any property under the defendants control, whether the property is within or without the United

States, as long as the court obtains personal jurisdiction over the party. Id. at *25.

The Second Circuit routinely provides for such relief to ensure the availability of an equitable accounting and issuing the order on an ex parte basis will ensure Defendants' compliance with the order. See Fujian, No. 10-cv-01630 (AKH) (S.D.N.Y. Mar. 16, 2010). Experience shows that defendants in these types of cases will otherwise ignore orders restraining assets that are issued with prior notice and claim ignorance of their responsibilities while simultaneously draining their financial accounts before an order is issued, thereby rendering a plaintiff's right to an equitable accounting meaningless. Here, Defendants will be able to hide their assets, making it particularly important that the Court order an ex parte order freezing of all Defendants' assets from their illicit operations.

In determining whether to issue an order restraining a defendant's assets, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendant might hide their illegal ill-gotten funds if their assets were not frozen. Marnatech, 737 F.Supp. at 1524, 1527. Plaintiffs have shown all these things, and accordingly, the grant of an injunction restraining the transfer of Defendants' assets is proper. Therefore, it is appropriate for this Court to issue such an order.

As discussed, Rolex has shown a strong likelihood of succeeding on the merits of its trademark counterfeiting claims, and thus Rolex ultimately will be entitled to an equitable accounting of profits from sales of Defendants' illegal goods. 15 U.S.C. § 1117. Courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 987 (11th Cir. 1995); Marnatech Enters., Inc., 737 F.Supp. 1521, 1525 (S.D.N.Y. 1989), aff'd 970 F.2d 552 (9th Cir. 1992).

In Marnatech, the District Court granted the plaintiffs a limited restraint of the

defendants' assets for the purpose of preserving the same, thus ensuring the availability of a meaningful account after the trial. The Ninth Circuit affirmed the District Court's decision stating:

> Because the Lanham Act authorizes the District Court to grant [plaintiff's] an equitable accounting of [defendants'] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendants'] assets in order to ensure the availability of that final relief.

Id. at 559; see also Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989).

In the years since Marnatech, virtually all the federal courts have granted the temporary restraint of assets in cases similar to this one. See Rolex Watch U.S.A., Inc. v. Alvarez, No. 11-CIV-0252 (S.D.N.Y. Jan. 12, 2012) (Swain, J.); supra Rolex Watch U.S.A., Inc. v. Oganesyan, No. 11-CIV-8182 (S.D.N.Y. Nov. 14, 2011), Oetken , J. (Order signed by Sweet, J.); Rolex Watch, U.S.A., Inc. v. White, No. 11-CIV-5415 (S.D.N.Y Aug. 4, 2011) (Jones, J); Coach, Inc. v. Montiel, No. 11-CIV-6213 (S.D.N.Y. Sept. 6, 2011) (Swain, J); Coach, Inc. v. Andre, No. 11-CIV-6215 (S.D.N.Y. Sept. 6, 2011) (Baer, J); Coach, Inc. v. Smith, No. 11-CIV-3573 (S.D.N.Y. May 26, 2011) (Pauley, J.); Coach, Inc. v. Yu, No. 11-CIV-2873 (S.D.N.Y. Apr. 28, 2011) (Baer, J.) (Order signed by Batts, J.); Coach, Inc. v. Urbina, No. 11-CIV-2362 (S.D.N.Y. Apr. 7, 2011) (Crotty, J.); Coach, Inc. v. Davis, No. 11-CIV-1986 (S.D.N.Y. Mar. 22, 2011) (Stanton, J.) (Order signed by Baer, J.); Coach, Inc. v. Leap, No. 11-CIV-1985 (S.D.N.Y. Mar. 22, 2011) (Sand, J.) (Order signed by Baer, J.); Coach, Inc. v. Pettie, No. 11-CIV-1987 (S.D.N.Y. Mar. 22, 2011) (Buchwald, J) (Order signed by Baer, J.); Coach, Inc. v. Clemente-Cox, No. 11-CIV-1633 (S.D.N.Y. Mar. 14, 2011) (Pauley, J.); Coach, Inc. v. Braun-Oleyar, No. 11-CIV-1634 (S.D.N.Y. Mar. 10, 2011) (Sweet, J.) (Order signed by Berman, J.); Coach, Inc. v. Deprez, No. 11-CIV-0303 (S.D.N.Y. Jan. 24, 2011) (Sand, J.); Coach, Inc. v. Simpson & Simpson, Inc., No. 11-CIV-0302 (S.D.N.Y. Jan. 24, 2011) (McMahon, J.); Coach, Inc. v. Samero, No. 11-CIV-0299

(S.D.N.Y. Jan. 19, 2011) (Koeltl, J.); Coach, Inc. v. Zeibell, No. 11-CIV-0258 (S.D.N.Y. Jan. 19, 2011) (Batts, J.); Coach, Inc. v. Waller, No.10-CIV-9237 (S.D.N.Y. Dec. 10, 2010) (Swain, J.). See also supra Fujian, No. 10-cv-01630 (AKH) (S.D.N.Y. Mar. 16, 2010); Antik Denim LLC v. Da Urban Hut et al., 05 CV 10077 (JFK)(S.D.N.Y. Dec. 12, 2005); The North Face Apparel Corp. v. TC Fashions, Inc., 05 CV 9082 (S.D.N.Y. Oct. 25, 2005); The North Face Apparel Corp. v. Reliance Dep't Store, Inc., 03 CV 9596 (BSJ)(S.D.N.Y. Dec. 3, 2003); Cartier Int'l B.V. v. Sam Liu, 02 CV 7926, 2003 WL 1900852 (S.D.N.Y. Apr. 17, 2003); Fila U.S.A., Inc. v. Top Luxor Trading, CV 98-5187 (C.D. Cal. June 29, 1998); Reebok Int'l Ltd. v. McLaughlin, 89 Civ. 1739-T (S.D. Cal. Nov. 27, 1989); Reebok Int'l Ltd. v. Marnatech Enters., Inc., 737 F.Supp. 1521 (S.D. Cal. 1990); Fila U.S.A., Inc. v. Eidai Int'l, CV 93-00837 (D. Haw. Oct 29, 1995); Reebok Int'l Ltd. v. Fairgulf Int'l Shipping & Trading, U.S.A., Inc., 93 Civ. 391 (W.D. Tex. Sept. 28, 1993); Cartier Int'l v. Gorski, 301 CV 1948 (PCD)(D. Conn. Oct. 17, 2001). Since the Lanham Act authorizes an award of an accounting of a counterfeiter's profits, the Court has the inherent power to freeze the counterfeiters' assets to assure the availability of that recovery. Balenciaga, 2010 U.S. Dist. LEXIS at *24. Restraint can be granted pursuant to Federal Rules of Civil Procedure Rules 64 and 65, under §§ 34 and 35 of the Lanham Act, and under the Court's inherent equitable power to issue provisional remedies ancillary to their authority to provide final equitable relief. Levi Strauss & Co., 51 F.3d at 986-987; and Marnatech, 970 F.2d at 558-61.

Therefore, it is appropriate for this Court to issue such an order.


IV.    ROLEX SHOULD BE ALLOWED TO ENGAGE IN EXPEDITED DISCOVERY.

Pursuant to 15 U.S.C. §1116(d)(10)(A), this Court must hold a hearing to review the requested order between ten (10) and fifteen (15) days after the order is issued.  In connection with that hearing, Subsection 1116(d)(10)(B) provides that this Court "may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary

to prevent the frustration of the purposes of such hearing."

Here, accelerated discovery will benefit the parties by insuring a fully developed record is before this Court at the required hearing. Specifically, Rolex requests this Court allow Rolex to immediately depose the Defendants and to immediately propound requests for production of documents and interrogatories with a command that responses be served within three (3) days. Such an accelerated discovery schedule will not prejudice the Defendants and will serve the interests of justice. Absence of preliminary discovery will prejudice Rolex by denying it the additional documents and information necessary to fully develop its case at the required hearing. In such a case, an order of expedited discovery is appropriate. See Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 327 (S.D.N.Y. 2005).

Therefore, it is appropriate for this Court to issue such an order.

V.     THE COURT FILE SHOULD BE TEMPORARILY SEALED.

The element of surprise is of utmost importance if an action for temporary restraining order is to be effective. Sealing of the court file in a case such as this is expressly provided for in the Lanham Act. 15 U.S.C. §1116(d)(8). Sealing of a court file protects the identity of the parties and the nature of relief sought, and prevents the criminal counterfeiter from secreting and concealing inventory and records relating to the unauthorized activities.

## CONCLUSION

Wherefore, due to Defendants' willful unauthorized activities, it is respectfully requested (a) a temporary restraining order; (b) order to show cause why a preliminary injunction should not be issued; (c) expedited discovery order; (d) asset restraining order; and (e) an order temporary sealing the court file

GIBNEY, ANTHONY & FLAHERTY, LLP

Dated: Feb. 1 , 2012

Brian W. Brokate (BB 5830)
John Macaluso, Esq. (JM 2058)
Walter-Michael Lee, Esq. (WL 6353)
665 Fifth Avenue
New York, NY 10022
Telephone:  (212) 688-5151
Facsimile: (212) 688-8315
Attorneys for Plaintiffs